cision.    Among other things it is agreed that the landlord leased the premises to a new tenant August 1st, 1912, in accordance with an understanding with the representative of the tenant Stewart.    The facts, with the application of the law as above recited, would clearly warrant the judgment rendered by the justice of the peace upon the agreed statement of facts, and there is no error therein.

Therefore judgment will be awarded for the full amount in case No. 34404, and the petition in error in 34639 will be dismissed at the costs of the plaintiff in error.

---

### RENTAL FOR OIL AND GAS LANDS.

Common Pleas Court of Licking County.

J. P. DRUMM v. THE NORTH AMERICAN OIL & GAS COMPANY. *

Decided, September Term, 1911.

*Oil and Gas—Liability of Lessee for Rental—Where no Well is Sunk During the First Year of the Lease.*

Where a lease covering oil and gas lands contains the provision that, in the event no well is completed during the first year of the lease, it may be extended by payment of an "annual rental thereafter until said first well is completed," but does not stipulate that the rent shall be paid in advance, the lessee has the provilege of paying at any time during the year, and upon his failure to pay suit will lie therefor.

*J. M. Swartz,* for plaintiff.
*Fitzgibbon & Montgomery,* contra.

WICKHAM, J. (orally).

The plaintiff in this case brought suit to recover rentals on oil and gas leases.    There are two causes of action in the petition.    There are two gas leases.    The amount claimed in the petition is $169 and interest.    The leases were made on the 17th day

---

* For contrary holding, see *North American Oil Co.* v. *Drumm,* 15 C.C. (N.S.), 230.

of March, 1908. The provisions of the leases are the same. They only differ in the amount of land and the amount of rental. Each contains a provision as follows:

"Provided a well is not completed on said premises within one year from the date hereof, unavoidable accidents or delays excepted, then this grant shall become null and void, unless party of the second part shall pay or cause to be paid to party of the first part at the rate of one dollar per acre annually thereafter until said first well is completed."

The lessee paid the annual rental before the end of the year beginning March 17, 1909. No well was drilled the first year— between March 17th, 1908, and 1909. In 1910, the first annual rental was paid by the lessee. No rent was paid for the year ending March 17, 1911. The plaintiff brought suit to recover the rental.

It is claimed by the defendant that the lease became void by failure to pay the rental due in March, 1910. On the other hand, it is claimed by counsel for the plaintiff that the lease did not become null and void until after the year ending March 17, 1911. We are cited to *Archer's Law and Practice in Oil and Gas Cases*, page 700.

In *Rhodes* v. *Mound City Gas & Oil Co.*, 80 Kan., 762 (104 Pac., 851), the syllabus is as follows, second paragraph:

"In the absence of terms indicating a contrary intention, a covenant in a gas and oil lease to drill a well on the leased premises within two years, or thereafter pay $80 annually until a well is drilled, does not require the annual payments to be made in advance, and the covenant is performed by a single payment of the entire sum at any time before the end of the year for which it is made."

Our Supreme Court has held substantially the same in the case of *Gas Co.* v. *Eckert*, reported in the 70 Ohio State Reports, at page 127. The syllabus in that case reads:

"A grant to a corporation, its successors and assigns, without limitation as to time, of 'all the oil,' etc., upon the following terms: 'First. Second party agrees to drill a well upon said premises within six months from this date, or thereafter pay to

the first party one hundred and sixty dollars annually until said well is drilled, or the property hereby granted is reconveyed to the first party. Seventh. Second party may at any time remove all their property and reconvey the premises hereby granted, which conveyance said first party agrees to accept, and thereupon this instrument shall be null and void,' after the expiration of six months, and until a well is drilled, is a lease at an annual rental of one hundred and sixty dollars, at the option of the lessee only.''

From the statement of facts, it appears that the company did not drill a well within the time specified in the lease.

The company paid the sum or rental stipulated by the first section of the lease in each of the years 1895, 1896, 1897 and 1898, and on the 12th day of July, 1899, tendered the amount for the year thereafter ending in that month. So that it appears that they tendered the annual rental for the fifth year shortly before the expiration of the year, in July, 1899. The land owner refused to accept it and on the 11th of July, 1899, served notice upon the gas company that it had no further right under the lease, and that he had elected to and did terminate the lease.

On the 12th day of July, 1899, the gas company moved onto the property and undertook to erect a derrick for the purpose of drilling for oil.

The landowner then brought suit and obtained an injunction against the gas company from doing anything upon the premises. The court held that the plaintiff was not entitled to an injunction, and held that the lease was a valid and subsisting lease until the end of the year, and would continue if the lessee had paid the rentals; and as he did pay the rental, it was a subsisting and continuing contract. The circuit court held to the contrary, and the judgment of the circuit court was reversed and the cause was remanded for further proceeding.

As we understand the holding in the case—and the lease contained substantially the same provision as in the case before the court now—the Supreme Court held that the rental was due at the close of the year, and might be paid at any time before the end of the year; and there was no provision that the rental should be paid in advance.

In the 71st Ohio State, at page 302, the syllabus reads:

"A grant in consideration of one dollar of all the oil and gas under certain premises with the right to enter thereon for the purpose of drilling and operating for oil and gas excepting and reserving to the grantor the one-sixth part of all the oil produced and saved from said premises, to be delivered in the pipe lines with which the grantee may connect his wells, implies an engagement by the lessee to develop the premises for oil and gas.

"The time within which the implied engagement must be performed is postponed by acceptance of the sum specified in the condition of such grant that 'in case no well is completed within ninety days from date hereof, unavoidable delay excepted, then this grant shall become null and void, unless second party shall pay to first parties, twenty-five cents an acre per year, payable by deposits at the ——— or directly to first party, after demand having first been made,' and does not commence to run until the end of the year for which payment is accepted, and the lease does not become null and void at the end of such year upon refusal of the grantor to accept payment for another year."

In view of these decisions by the Supreme Court, and it appearing that this was a lease stipulated for the payment of an annual rental, without stipulating that it should be paid in advance, we think that the lessee had a right to pay at any time within the year for which rentals were to be paid. The court holds that they had the whole of the second year in which to pay the rental for that year.

Whether the lease became null and void after the expiration of the last year, does not concern us now, because that question is not before the court.

We find that the plaintiff is entitled to recover the annual rental for the year ending March 17, 1911, in the sum of $169, with interest; making a total of $174.15. Judgment for plaintiff for $174.15, with costs.